# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| Unmanned Aircraft System identified as make ) | Case No. 20-MJ-04707 |
| DJI, Model M1X Mavic Pro Platinum, serial ) | |
| number 08Q3G9KP01W033 ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

   *See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

   *See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  ☒ evidence of a crime;
  ☒ contraband, fruits of crime, or other items illegally possessed;
  ☒ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. § 46306(b)(5)(A), (6)(A) | Registration Violations Involving Aircraft Not Providing Air Transportation |
| 18 U.S.C. § 32(a)(5), (a)(8) | Attempted Destruction of Aircraft |
| 18 U.S.C. § 39B | Unsafe Operation of Unmanned Aircraft |

The application is based on these facts:

   *See attached Affidavit*
   ☒ Continued on the attached sheet.
   ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Jamaal J. Westby
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: October 1, 2020

*Judge's signature*

City and state: Los Angeles, CA        Honorable John E. McDermott
*Printed name and title*

AUSA: El-Amamy x0552

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

The item to be search is the following digital device, which was seized on September 18, 2020:  One Unmanned Aircraft System, commonly referred to as a drone, identified as make DJI, model M1X Mavic Pro Platinum, serial number 08Q3G9KP01W033black.



i

**ATTACHMENT B**

**I.   ITEMS TO BE SEIZED**

1. The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 49 U.S.C. § 46306(b)(5)(A), (6)(A): Registration Violations Involving Aircraft Not Providing Air Transportation; 18 U.S.C. § 32(a)(5), (a)(8): Attempted Destruction of Aircraft; and 18 U.S.C. § 39B: Unsafe Operation of Unmanned Aircraft (the "Subject Offenses"), namely:

   a. One DJI, model M1X Mavic Pro Platinum Unmanned Aircraft System ("UAS") utilizing NAZA component with serial number 08Q3G9KP01W033 and all electronic storage devices, including but not be limited to any Secure Digital cards, hard drives, data retained on other electronic components, and any device and/or part that is capable of storing data located on the UAS.

   b. Records, programs, documents, and materials identifying the ownership and operator of the UAS and locations the UAS traveled to and from;

   c. Records, programs, documents, and materials consisting of the firmware and any upgrades to firmware, and relating to altitude records, radar functioning, distance travelled, vertical speed, horizontal speed, distance between the UAS and the controller, flight logs and telemetry information for flights conducted, Global Positioning System tracking data/history for all flights, and video or picture recordings stored on the device.

      d.    Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

      e.    With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

      i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

      ii.    evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

      iii.    evidence of the attachment of other devices;

      iv.    evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

      v.    evidence of the times the device was used;

      vi.    passwords, encryption keys, and other access devices that may be necessary to access the device;

      vii.    applications, utility programs, compilers, interpreters, or other software, as well as documentation and

manuals, that may be necessary to access the device or to conduct a forensic examination of it;

        viii.    records of or information about Internet Protocol addresses used by the device;

        ix.    records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    2.    As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II.  **SEARCH PROCEDURE FOR THE SUBJECT DEVICE(S)**

    3.    In searching the SUBJECT DEVICE(S) (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

        a.    Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

        b.    The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

   c. The search team shall complete the search of the SUBJECT DEVICE(S) as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) beyond this 120-day period without obtaining an extension of time order from the Court.

   d. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

    i. The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

    ii. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

    iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

   e. The search team will not seize contraband or evidence relating to other crimes outside the scope of the items

iv

to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

   f. If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

   g. If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

   h. If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

   i. The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

   j. After the completion of the search of the SUBJECT DEVICE(S), the government shall not access digital data falling

outside the scope of the items to be seized absent further order of the Court.

      4.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**AFFIDAVIT**

I, Jamaal J. Westby, being duly sworn, declare and state as follows:

I. **INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since September 2017. Prior to my employment with FBI, I was a United States Customs and Border Protection Officer for six years. I am assigned to the Los Angeles International Airport Office of the FBI, where I investigate violations of federal law occurring within the airport environment and involving aircraft, as well as violations of federal law involving Unmanned Aircraft Systems ("UAS"), commonly referred to as drones.

II. **PURPOSE OF AFFIDAVIT**

2. This affidavit is made in support of a search warrant for a UAS identified as make DJI, Model M1X Mavic Pro Platinum, serial number 08Q3G9KP01W033 (the "SUBJECT DEVICE") described in Attachment A, for the items to be seized described in Attachment B.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all

conversations and statements described in this affidavit are related in substance and in part only.

### III. ITEM TO BE SEARCHED

4. The item to be searched is the SUBJECT DEVICE described in Attachment A, which is incorporated herein by reference.

### IV. ITEMS TO BE SEIZED

5. The items to be seized are the evidence, fruits, and instrumentalities of violations of 49 U.S.C. § 46306(b)(5)(A), (6)(A): Registration Violations Involving Aircraft Not Providing Air Transportation; 18 U.S.C. § 32(a)(5), (a)(8): Attempted Destruction of Aircraft; and 18 U.S.C. § 39B: Unsafe Operation of Unmanned Aircraft, (collectively, the "Subject Offenses"), as described in Attachment B, which is incorporated herein by reference.

### V. STATEMENT OF PROBABLE CAUSE

**A. Technical Terminology**

6. Based on my training and experience, and that of other investigators with whom I have conferred, I use the following technical terms to convey the following meanings:

   a. A UAS, commonly referred to as a "drone," is defined by the Federal Aviation Administration ("FAA") as "an aircraft that is operated without the possibility of direct human intervention from within or on the aircraft." 14 C.F.R. § 107.3.

   b. The FAA defines a UAS as "an unmanned aircraft and associated elements (including communication links and

2

the components that control the unmanned aircraft) that are required for the pilot in command to operate safely and efficiently in the national airspace system." FAA Modernization and Reform Act of 2012 § 331(9).

      c.    An "SD" card is a Secure Digital card, officially abbreviated as SD card, and is a proprietary non-volatile memory card format developed by the SD Card Association for use in portable devices. Some SD cards are fixed to electronic devices, while others are removable.

    **B.    Applicable Law**

    7.    The FAA is an agency within the United States Department of Transportation responsible for the control and use of navigable airspace within the United States.

    8.    Title 49 U.S.C. § 46306(b)(5)(A) and (6)(A) of criminalizes the knowing and willful operation of an aircraft, a term that includes UAS over 0.55 pounds, that has not been registered with the FAA. Registration with the FAA results in obtaining from the FAA a unique identifier consisting of several letters and/or numbers that start with the letters "FA."

    9.    Title 14 C.F.R. § 48.205 prescribes the manner in which registration must be evidenced to demonstrate compliance with FAA registration requirements. It states:

      a.    The unique identifier must be maintained in a condition that is legible.

      b.    The unique identifier must be affixed to the small unmanned aircraft by any means necessary to ensure that it will remain affixed for the duration of each operation.

3

        c.    The unique identifier must be legibly displayed on an external surface of the small unmanned aircraft.

    10.    Title 18 U.S.C. § 32(a)(5) and (a)(8) prohibit an individual from willfully interfering, or attempting to interfere, with intent to endanger the safety of any person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of such aircraft or any air navigation facility aiding in the navigation of any such aircraft.

    11.    Title 18 U.S.C. § 39B criminalizes the knowing or reckless interference or disruption of the operation of an aircraft carrying one or more occupants while operating an unmanned aircraft where the action poses an imminent safety hazard to manned aircraft or such occupants.

    **C.**    **Statement of Facts**

    12.    Based on my training, experience, and knowledge of the investigation, including my review of law enforcement reports, I am aware of the following:

        a.    On September 18, 2020, at approximately 12:18 a.m., the Los Angeles Police Department ("LAPD") received a silent burglary alarm at Rite Aid located at 1815 Vermont Avenue (the "Rite Aid"). LAPD dispatch sent a patrol unit to that location. Upon arrival, the patrol officers requested an air support unit to respond and check the Rite Aid's rooftop for burglary damages.

        b.    At approximately 12:35 a.m., in response to the report of an alarm and burglary at that location, LAPD Officers

Lomax, pilot, and Ornelas, tactical flight officer ("TFO"), flew a LAPD helicopter in the airspace above the Rite Aid.

   c. Both officers observed a hole on the roof of the Rite Aid, and directed LAPD ground units for containment of the business.  As TFO Ornelas was directing ground units to a door on the northwest corner of the Rite Aid, Officer Lomax informed TFO Ornelas about the presence of a possible drone, and immediately pulled the helicopter up.

   d. The drone struck the bottom of the helicopter. Officer Lomax advised TFO Ornelas that everything seemed to be normal with the helicopter controls however, they would be landing at Hooper Heliport.  TFO Ornelas notified the officers on the ground of the incident, and requested that officers with a LAPD ground unit search the area for the drone.

   e. Officer Lomax landed at Hooper Heliport without incident.  After he exited the helicopter, he checked the aircraft, and observed a possible point of impact just below the aircraft's nose.  He observed several scratches and chipped paint on an antennae, and a small piece of metal wedged between the bottom cowlings possibly from the drone.

   f. Immediately after the UAS hit the helicopter, LAPD Officers Morse and Gonzalez searched the area near the Rite Aid for the UAS.  They located a white 2020 Toyota Corolla, with California license plate number 8LCK844 with a broken rear windshield parked in front of 1731 Menlo Avenue, Los Angeles, California 90006.  They recovered a piece of gray plastic in the rear seat that did not seem to belong to the vehicle.  Officer

5

Gonzalez located another piece of gray plastic lying in the street northeast of the vehicle. Officer Morse located the camera portion of the UAS on the front patio of 1739 Menlo Avenue and the main portion of the UAS, including the serial number, in the driveway of 1733-1735 Menlo Avenue. The patrol officers collected the drone and its pieces that were scattered about the immediate area.

        g.   On September 18, 2020, I interviewed LAPD Flight Safety Officer J. Coley Maddigan. Officer Maddigan is a LAPD Officer, and a pilot with LAPD assigned to the LAPD Air Support Division. Officer Maddigan stated that, based on his observations of the helicopter after it was hit by the UAS, he believed that if the UAS struck the helicopter's main rotor instead of the fuselage, it could have brought the helicopter down. The main rotor is attached to the top of the fuselage and extends outward. If the point of impact was wider, the UAS could have missed the fuselage and made direct contact with the rotor.

    13.   According to the manufacturer, the SUBJECT DEVICE has a designed takeoff weight of 734 grams. This is equivalent to approximately 1.62 pounds, which exceeds the 0.55-pound threshold requiring registration.

    14.   On September 19, 2020, FAA Special Agent Craig Burns verified with the FAA's Law Enforcement Assistance Program ("LEAP") that serial number 08Q3G9KP01W033, printed on the inside of the drone, did not appear in the FAA registration database.

## VI. <u>TRAINING AND EXPERIENCE WITH RESPECT TO DJI DRONES AND OTHER UAS</u>

15. Based on my review of the www.dji.com website specifications for the Mavic Pro Platinum UAS, I know that this UAS contains a camera that is capable of recording photographs and video.

16. I also know that this UAS has a slot for a removable storage micro SD card capable of storing, among other things, photographs and video recorded by the UAS camera. Based on my training and experience, I know that UAS operators frequently record photographs and video during flight. Based on my training and experience, I also know that removable storage and internal memory of electronic devices can potentially store logs, registry entries, global positioning systems data, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, videos, photographs, and correspondence.

17. Additionally, I am also aware that UASs contain flight logs and telemetry information for flights conducted with the UAS. Consequently, I seek authorization to search and obtain information from DJI Technology, including the information contained on DJI Technology electronic databases, as it relates to the UAS identified in this affidavit to collect potential evidence of flights, ownership, and operations of the UAS.

18. Based on my training and experience, I know that reviewing the following material will assist in identifying the operator of the UAS: the firmware and any upgrades to firmware;

7

any and all data, altitude records, radar functioning, distance travelled, vertical speed, horizontal speed, distance between the UAS and the controller, Global Positioning System tracking data/history for all flights, and video or picture recordings stored on the device.

### VII. **TRAINING AND EXPERIENCE ON DIGITAL DEVICES**

19.  As used herein, the term "digital device" includes the SUBJECT DEVICE.

20.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has

8

been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

        c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    21.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

## VIII.   **CONCLUSION**

22. For all the reasons described above, there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of violations of the Subject Offenses will be found in the SUBJECT DEVICE, as described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _____ day of
_____, 2020.

_____
UNITED STATES MAGISTRATE JUDGE